1

2

3

4

5           UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8    METROPOLITAN LIFE INSURANCE          Case No.  12-cv-04607-JD
     COMPANY,

9                    Plaintiff,           **ORDER GRANTING IN PART AND
                                          DENYING IN PART METLIFE'S
10         v.                             MOTION FOR SUMMARY JUDGMENT**

11   JUMOKE OYEDELE,                      Re: Dkt. No. 92

12                    Defendant.

13

14         Metropolitan Life Insurance Company ("MetLife") wants to rescind two insurance policies

15   issued to Jumoke Oyedele because it alleges she fraudulently misrepresented her medical history

16   when she applied for them.  Oyedele seeks damages, including punitive damages, from MetLife

17   on the allegation that it acted in bad faith in handling her claim for benefits under the policies.

18   MetLife moves for summary judgment on all these claims.  The Court denies summary judgment

19   on the rescission claims because the parties dispute facts material to them.  The Court grants

20   summary judgment on the bad faith and punitive damages claims.

21                            **FACTUAL BACKGROUND**

22         Oyedele suffered a car accident on January 3, 2008.  In the months following the accident,

23   Oyedele consulted physicians and underwent medical procedures to treat pain affecting her left

24   hand and neck.  On July 24, 2008, Oyedele visited Dr. Gordon Brody and filled out a medical

25   questionnaire in which she reported having "[p]ain in left hand and arm and shoulder."  Ashley

26   Smith Decl. Ex. A at 2,[1] Dkt. Nos. 92-3 and 92-4.  She continued, "I also have severe pain in my

27

28   [1] All number cites to Exhibit A to the declaration of Ashley Smith omit the "MetLife_Oye_" Bates
     number prefix.  For example, this pincite to page 2 refers to MetLife_Oye_000002.

_United States District Court_
_Northern District of California_

United States District Court
Northern District of California

neck and lower back sometimes making it impossible for me to walk.  Very painful." *Id.*  Less than two weeks later, Oyedele saw Dr. Peter Abaci, who reported that Oyedele "lack[ed] functional use of her left hand. … She notes that her neck pain started about three or four days after the accident and has continued to be problematic for her as well. … She reports overall significant functional loss of use of the left arm and hand."  Smith Decl. Ex. A at 5.  On September 5, 2008, Dr. Abaci administered a "lumbar epidural steroid injection" procedure to treat Oyedele's pain, and a fortnight later, on September 19, Dr. Abaci administered a "left stellate ganglion nerve block" for the same purpose.  Smith Decl. Ex. A at 7-8.

A year later, in September 2009, Oyedele applied for two insurance policies from MetLife: a disability insurance policy and a business overhead expense policy.  The application forms for the policies featured a number of questions about Oyedele's medical history.  Question 4(b) of a September 17, 2009, insurance application bearing Oyedele's signature asks, "In the past 5 years have you been medically examined, advised, or treated?"  Smith Decl. Ex. A at 325.  Next to it, the box labeled "No" is checked.  *See id.*  Question 5(b) of the same application asks, "Have you EVER received treatment, attention, or advice for; been told that you had; or had any known indication of:  … Arthritis; any disease, disorder or deformity of the bones, muscles, tendons, or joints, including the spine; any neck or back problems or disorders; carpal tunnel syndrome?"  *Id.* at 326.  Again, the box labeled "No" is checked.  *See id.*  Around the same time, Oyedele signed an authorization releasing her medical records to MetLife.  Declaration of Jumoke Oyedele Ex. 2, Dkt. No. 106-4.

That same month, Oyedele underwent a paramedical exam by a MetLife medical technician.  The copy of the exam MetLife provided is mostly illegible, *see* Smith Decl. Ex. A at 314-17, but Oyedele conceded at oral argument that it did not mention any neck problems.  Finally, on September 24, 2009, Oyedele participated in a recorded interview with a MetLife employee, where she answered "No" to a question asking, "Have you consulted with any counselors, psychiatrists, chiropractors, therapists, social workers, health facilities, or other practitioners in the past 5 years."  *Id.* at 436.

2

1    MetLife issued Oyedele the disability policy and the business overhead expense policy on

2    November 9, 2009.  On November 25, 2009, at MetLife's request, Oyedele signed three

3    "Application Amendments," one of which disclosed the fact that she had been involved in a car

4    accident:

> My 01/03/2008 visit with I do not recall the doctor's name was for the purpose(s) of minor lower back pain due to a car accident.  The results of that visit were no surgery, no disc involvement and I missed 1 month of work.  Since then, I have not had any further symptoms or complaints, nor have I required nor have I sought any follow up care or treatment.  I was not referred to any other physician, psychologist, chiropractor, counselor or therapist, nor was I recommended to have any follow up care, testing, surgery or any other procedure related to this condition.   I represent that the condition has resolved successfully and I have fully recovered with no residual effects.  I remain symptom free and I have not required the further attention of any medical professional.

12   Smith Decl. Ex. A at 337.

13    Oyedele's application documents are not consistent with the preceding description of

14   Oyedele's doctor's visits and procedures in 2008 and her medical history in the documents

15   submitted to MetLife.  In Oyedele's telling, this conflict is the result of a persistent failure on the

16   part of multiple MetLife employees and agents to take down her words correctly -- a failure that

17   she says she was unaware of at the time.  According to declarations from Oyedele, her son (Jimi

18   Williams), and her practice manager (Richard Williams), Oyedele "disclosed in detail all of[her]

19   relevant medical history" to MetLife's insurance agent, Jonathan Ebrahimoon.  *See* Oyedele Decl.

20   ¶¶ 4-5; *see also* Declaration of Jimi Williams ¶¶ 3-4, Dkt. No. 106-1; Declaration of Richard

21   Williams ¶ 5, Dkt. No. 106-2.  She then signed a blank MetLife application, which she claims

22   Ebrahimoon filled out -- apparently inaccurately -- and submitted to MetLife without her review.

23   *See* Oyedele Decl. ¶ 7.  Oyedele similarly claims that the MetLife medical technician incorrectly

24   filled out her paramedical exam form, *id.* ¶ 5, that she answered the questions during her telephone

25   interview "in a hurry" because she was "trying to get off the phone as [she] had guests over," *id.* ¶

26   9, and that she signed the Application Amendments in November 2009 without "reviewing the[ir]

27   content," *id.* ¶ 12.

28

3

1    On February 10, 2012, Oyedele submitted claims under both policies. MetLife has paid

2    her -- and continues to pay her -- benefits under the disability insurance policy under a reservation

3    of right, but (apart from a single $50,000 payment in November 2012) has not paid benefits under

4    the business overhead expense policy, claiming that it needs additional documentation from

5    Oyedele. *See* Smith Decl. ¶ 11; Oyedele Decl. ¶ 34, Dkt. No. 106. MetLife filed this action for

6    rescission on September 4, 2014. MetLife's rescission claim "is based solely on the non-

7    disclosure and wilful misrepresentation regarding her hand and neck injuries." MetLife Motion

8    for Summary Judgment at 2 n.1, Dkt. No. 92.

9                                      **LEGAL STANDARD**

10    Summary judgment is proper where the pleadings, discovery and affidavits show that there

11    is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

12    matter of law." Fed. R.Civ. P. 56(a). Material facts are those which may affect the outcome of the

13    case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material

14    fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

15    nonmoving party. *See id.* Only disputes over material facts will preclude summary judgment;

16    "factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

17    The moving party for summary judgment bears the initial burden of identifying those

18    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

19    issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the moving

20    party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

21    reasonable trier of fact could find other than for the moving party. *See id.* On an issue for which

22    the opposing party will have the burden of proof at trial, however, the moving party need only

23    point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

24    Once the moving party meets its initial burden, the nonmoving party must go beyond the

25    pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a

26    genuine issue for trial. *See* Fed. R. Civ. P. 56. It is not the task of the district court to scour the

27    record in search of a genuine issue of triable fact. *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.

28    1996). The nonmoving party has the burden of identifying with reasonable particularity the

United States District Court
Northern District of California

4

1   evidence that precludes summary judgment.  *See id.*  If the nonmoving party fails to make this

2   showing, "[t]he moving party is entitled to a judgment as a matter of law."  *Celotex Corp.,* 477

3   U.S. at 323.

4                                    **DISCUSSION**

5   **I.  METLIFE IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE RESCISSION
        CLAIMS**

6

7           Under California law -- which the parties agree governs here -- every party to an insurance

8   contract must "communicate to the other, in good faith, all facts within his knowledge which are ...

9   material to the contract ... and which the other has not the means of ascertaining."  Cal. Ins. Code

10  § 332.  Concealment or misrepresentation of material facts ordinarily permits an insurer to rescind

11  an insurance policy.  *See* Cal. Ins. Code §§ 330, 331, 359.  But because MetLife's attempt to

12  rescind the policies comes more than two years after their effective dates, the insurance policies

13  impose the additional requirement that any concealment or misrepresentation be fraudulent, as the

14  Court has previously held.  *See Metropolitan Life Ins. Co. v. Oyedele*, No. 12-cv-04607-JD, 2014

15  WL 4755627, at *2 (N.D. Cal. Sept. 24, 2014).

16          There is no disputing the fact that the answers to questions 4(b) (which claimed that

17  Oyedele had not been medically examined in the past five years) and 5(b) (which claimed that

18  Oyedele had never had any indication of neck problems) -- to pick the two clearest examples --

19  were incorrect, in light of Oyedele's visits in 2008 to Drs. Brody and Abaci.  Oyedele nevertheless

20  contends summary judgment should be denied because there are genuine disputes of material fact

21  as to whether (1) MetLife should have known Oyedele's true condition; (2) any misstatements on

22  her application were material; and (3) any such misstatements were fraudulent.  The Court finds

23  that Oyedele has adduced a genuine dispute of material fact on the first and third issues, but not

24  the second.  It therefore grants summary judgment with respect to the materiality issue only.[2]

25  _____

26  [2] At one time, most federal courts held that Rule 56 did not permit summary judgment on a part of
    a claim or suit.  *See* A.L.R.2d § 5[a] (collecting cases).  In 2010, however, the rule was amended
27  to explicitly provide that "[a] party may move for summary judgment, identifying each claim or
    defense -- or the *part of each claim or defense* -- on which summary judgment is sought."  Fed. R.
28  Civ. P. 56(a) (emphasis added).  The accompanying Advisory Committee notes explain that this
    sentence was "added to make clear at the beginning that summary judgment may be requested not

United States District Court
Northern District of California

1

**A.  Should MetLife have known Oyedele's true condition?**

2

Oyedele argues that, despite the misstatements on her applications, MetLife should have

3

known her true condition for two reasons:  she disclosed her "relevant medical history" to

4

MetLife's agent, Ebrahimoon, and MetLife had constructive notice of her medical history because

5

she signed an authorization releasing her medical records to them.

6

With respect to her claim that she verbally disclosed her neck and hand problems to

7

Ebrahimoon, Oyedele points to her own declaration and the declaration of her son, Jimi Williams,

8

who was with her when she met with Ebrahimoon in September 2009, as well as the declaration of

9

her practice administrator, Richard Williams, who met with Ebrahimoon in March 2014.  None of

10

the declarations mentions specific doctors' visits, but Oyedele and Jimi Williams claim that

11

Oyedele told Ebrahimoon about her car accident, her subsequent neck and back pain, and her

12

"relevant medical history," while Richard Williams claims that Ebrahimoon acknowledged these

13

disclosures during the 2014 meeting.  *See* Oyedele Decl. ¶¶ 4-5; Jimi Williams Decl. ¶¶ 3-4;

14

Richard Williams Decl. ¶ 5.

15

MetLife has answers to some of these claims.  With respect to Oyedele's declaration,

16

MetLife invokes the "sham affidavit" rule, which holds that "a party cannot create an issue of fact

17

by an affidavit contradicting his prior deposition testimony."  *Van Asdale v. Int'l Game Tech.*, 577

18

F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th.

19

Cir. 1991)).  It claims that Oyedele's present declaration contradicts her earlier deposition

20

testimony, in which she claimed that the only thing issue she told MetLife about that should have

21

led to Question 5(b) being answered "yes" was her back:

22

**Q.  Other than your back, is there anything else that you told them about that --**

23

**A.** Back or --

24

25

only as to an entire case but also as to a claim, defense, or part of a claim or defense."  *Id.*,
advisory committee's note to 2010 amendments.  Since 2010, a number of courts have held that

26

summary judgment can be granted on a portion of a claim.  *See, e.g.*, *Massachusetts Mut. Life Ins.*

27

*Co. v. Residential Funding Co.*, Case No. 11-30035-MGM, et al., 2014 WL 5470476, at *2 (D.
Mass. Oct. 29, 2014); *Hanson v. Safeco Ins. Co. of America*, No. C13-1151JLR, 2014 WL

28

3752114, at *4-5 (W.D. Wash. Jul. 30, 2014).  Thus, summary judgment on the materiality issue
alone is proper.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Q. -- should have led to a "yes" answer for 5(b)?**

**A.** Well, it was my back that was the only "yes" answer on that one, yes.

**MR. HARWOOD:** I'm sorry. I couldn't understand that.

**THE WITNESS:** My back was the only "yes" answer there.

Oyedele Deposition 53:6-15, Dkt. No. 92-10.  And with respect to Richard Williams, MetLife claims, among other things, that he was never disclosed to MetLife, as required by Rule 26(a), and that his statements regarding what Oyedele told Ebrahimoon during their September 2009 meeting are hearsay.

Even if MetLife is correct that Oyedele's declaration should be ignored and Richard Williams's excluded, however, it fails to object to the declaration of Jimi Williams, whose testimony, if believed, would suggest that Oyedele disclosed her neck and back issues to Ebrahimoon.  Jimi Williams's declaration about what Oyedele told Ebrahimoon is not hearsay, because it is not offered for the truth of what Oyedele told Ebrahimoon but rather to declare that he witnessed that Oyedele disclosed her conditions to Ebrahimoon.  (In any event, MetLife did not object to the declaration, and it is doubtful whether the Court can exclude his declaration absent an objection from MetLife.  While "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment," *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002), it is improper for a district court to exclude evidence when the party against whom it is offered waives its objection, *see Fonseca v. Sysco Food Services of Arizona, Inc.* 374 F.3d 840, 846-47 (9th Cir. 2004).)  The Court finds that there is a genuine dispute of material fact regarding whether Oyedele disclosed her neck and hand problems, and subsequent doctor's visits, to MetLife's agent Ebrahimoon in September 2009.

While the Court's conclusion renders it unnecessary to consider whether the authorization Oyedele signed giving MetLife access to her medical records gave them constructive notice of her medical problems, the Court notes that none of the cases Oyedele cites for that proposition support her argument.  *Rutherford v. Prudential Ins. Co.* dealt with the issue of estoppel, whereby an insured is barred from defending itself based on the falsity of an insurance questionnaire where the insured answers in good faith and the insurance company's agent incorrectly transcribes it .  234

7

Cal. App. 2d 719, 726 (Cal. Ct. App. 1965).  That case said only that an authorization to access

medical records by the insured is evidence of the insured's good faith, and suggested that

contradictory answers on the insured's questionnaire should have prompted further inquiry.  234

Cal. App. 2d at 731.  Here, there is no suggestion that the answers on Oyedele's application were

contradictory.  The other case Oyedele cites, *DiPasqua v. California Western States Life Ins. Co.*,

held that an "insurance company cannot rely solely upon the insured's answers in his application

where it conducts an independent investigation which reveals the falsity of such answers in

material respects."  106 Cal. App. 2d 281, 284-85 (Cal. Ct. App. 1951).  Here, no independent

investigation by MetLife prior to the issuance of the policies is alleged.  As the California Court of

Appeal noted in *Robinson v. Occidental Life Ins. Co.*, "No authority is cited and none will be

found holding that an insured or his beneficiaries may escape the consequences of his deception

by placing upon the insurer the burden of investigating his verified statements."  281 P.2d 39, 42

(Cal. Ct. App. 1955).

### B.  Were the misstatements material?

The misstatements in Oyedele's insurance applications were material.  "Materiality" is

determined by "the probable and reasonable influence of the facts upon the party to whom the

communication is due …." Cal Ins. Code § 334.   The fact that MetLife included questions about

Oyedele in its insurance application is itself evidence that the answers were material to MetLife's

decision to issue insurance to Oyedele.  "The fact that the insurer has demanded answers to

specific questions in an application for insurance is in itself usually sufficient to establish

materiality as a matter of law."  *See New Hampshire Ins. Co. v. C'Est Moi, Inc.*, 519 F.3d 937, 939

(9th Cir. 2008).

In addition, MetLife provides a declaration from Cynthia Jones, an Underwriting Manager

at MetLife, claiming that if MetLife had "known the truth with respect to the false answers

provided by Oyedele, it would not have issued the policies" -- in fact, issuing the policies would

have been contrary to MetLife's underwriting practices.  Cynthia Jones Declaration ¶ 7, Dkt. No.

92-1.

United States District Court
Northern District of California

1    Oyedele provides no evidence to rebut these statements.  Instead, she cites *Nieto v. Blue*

2    *Shield of California Life & Health Ins. Co.*, for the fact that a "trier of fact is not required to

3    believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused

4    had the true facts been disclosed."  103 Cal. Rptr. 3d 906, 920 (Cal. Ct. App. 2010).  But *Nieto* is a

5    good illustration of why MetLife is entitled to summary judgment on materiality.  The court there

6    went on to affirm the trial court's grant of summary judgment to the insurance company on

7    rescission, explaining that the insurance company's declarations regarding materiality "constituted

8    the only evidence on the point; appellant offered no evidence to raise a triable issue of fact as to

9    materiality." *Id.* at 920-21.

10    The Court therefore grants summary judgment to MetLife that the misstatements in

11    Oyedele's applications were material.

12    **C. Were the misstatements fraudulent?**

13    Summary judgment as to the rescission claim as a whole is additionally unwarranted

14    because MetLife has not shown an absence of factual disputes about whether any

15    misrepresentations by Oyedele were fraudulent.  California Civil Code § 1572 defines

16    actual fraud as:

17    any of the following acts, committed by a party to the contract, or
with his connivance, with intent to deceive another party thereto, or
18    to induce him to enter into the contract:

19    1. The suggestion, as a fact, of that which is not true, by one who
does not believe it to be true;
20

21    2. The positive assertion, in a manner not warranted by the
information of the person making it, of that which is not true, though
he believes it to be true;
22

23    3. The suppression of that which is true, by one having knowledge
or belief of the fact;

24    4. promise made without any intention of performing it; or,

25    5. Any other act fitted to deceive.

26    Although MetLife makes conclusory allegations that Oyedele's alleged misstatements in the

27    documents submitted to MetLife were fraudulent, Oyedele disclaims any knowledge that

28    statements she made to MetLife were false.  Oyedele's credibility is not before the Court on

United States District Court
Northern District of California

9

summary judgment.  *See Anderson*, 477 U.S. at 265 ("trial courts are not to weigh evidence when deciding summary judgment motions").  This dispute of material fact alone is sufficient to preclude summary judgment on the rescission claim.

## II.   METLIFE IS ENTITLED TO SUMMARY JUDGMENT ON OYEDELE'S BAD FAITH CLAIM

Oyedele's bad faith claim against MetLife is premised on the covenant of good faith and fair dealing implied in every contract (including insurance contracts) and unfair competition under California Insurance Code § 790.03(h)(2).  Because Oyedele bears the burden of proof on these claims, MetLife need only show that there is an absence of evidence to support Oyedele's case.  *Celotex Corp.*, 477 U.S. at 325.

With respect to the covenant of good faith and fair dealing, Oyedele's claims are barred by the "genuine dispute" rule.  The implied covenant of good faith and fair dealing is breached when an insurer delays or denies payment of policy benefits unreasonably or without proper cause.  *See Jordan v. Allstate Ins. Co.*, 56 Cal. Rptr. 3d 312, 318-19 (Cal. Ct. App. 2007).  California courts have derived from this a "genuine dispute" rule, whereby "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract."  *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1088-89 (Cal. 2007).  "The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable -- for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law."  *Id.* at 1089 (quoting *Amadeo v. Principal Mut. Life Ins. Co.* 290 F.3d 1152, 1161-62 (9th Cir. 2002), alteration in original).

Oyedele's claim for bad faith is based on a number of complaints about MetLife's handling of her claim for benefits, but none of the alleged examples of MetLife's malfeasance appears unreasonable to the Court even given Oyedele's version of the facts.  First, Oyedele argues that after she sought benefits under her policies, MetLife "began bombarding her [with]

United States District Court
Northern District of California

United States District Court
Northern District of California

1    numerous requests … regarding [her] medical history" and was "searching solely for a basis to

2    avoid payment of [her] benefits by finding a way to rescind [her] Policies."  Oyedele Decl. ¶¶ 26-

3    29, 36-68.  But the documents Oyedele cites, which show that MetLife was collecting instances

4    where Oyedele's doctors had previously noted her neck pain, are consistent with a reasonable

5    investigation, not at odds with it.  While Oyedele claims that some of these medical records

6    contain mistakes, which her doctors later corrected, it was hardly unreasonable for MetLife to ask

7    Oyedele for an explanation of them -- and evidence to support her explanation.  In investigating its

8    obligation to pay benefits under the policies, MetLife is entitled to investigate discrepancies in the

9    information Oyedele provided -- which, as the factual background section indicates, are

10   substantial.  Indeed, under California law, MetLife "could have exposed itself to bad faith liability

11   for not investigating enough."  *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 995 (9th Cir.

12   2001).  Furthermore, MetLife has been paying her and continues to pay under the disability policy

13   -- a fact hard to square with bad faith.

14        Oyedele also complains that MetLife has failed to pay her benefits under her business

15   overhead expense policy, apart from a single $50,000 payment.  Oyedele Decl. ¶¶ 32-34.  But

16   MetLife explained its reasons for withholding payment in a September 12, 2012, letter to Oyedele,

17   which noted inconsistencies in the financial documents Oyedele had provided, and requested

18   further documentation, including the rent agreement for her business premises and copies of her

19   tax returns.  Oyedele Decl. Ex. 22 at 45-46.  Oyedele points to no evidence that she explained

20   these discrepancies or provided the requested documents, and she does not explain why she

21   believes the requests were unreasonable.  Even if Oyedele ultimately prevails on her claim for

22   benefits, MetLife's actions are consistent with a genuine dispute between the parties.  *See Badell*

23   *v. Celtic Life Ins. Co.*, 159 F. Supp. 2d 1186, 1190-91, 1193-94 (N.D. Cal. 2001) (denying insurer

24   summary judgment on breach of contract claim, but granting summary judgment on bad faith

25   claim based on "genuine dispute" rule).

26        Finally, Oyedele claims that MetLife acted in bad faith by contacting the Dental Board of

27   California to ask about Oyedele's licensing status and whether they had pressed any criminal

28   charges against Oyedele.  Oyedele Decl. ¶ 38.  The board had suspended Oyedele's license in July

2011, but had not pressed any criminal charges against her.  *See id.*  While the outcome might be different if MetLife had publicly implied that Oyedele might be facing criminal charges, it does not seem obviously unreasonable to simply ask the board -- through a non-public letter -- whether it had sought criminal charges against Oyedele.  The Court finds that this is also not an example of unreasonable behavior on MetLife's part.

With respect to Oyedele's unfair competition claim under California Insurance Code § 790.03(h)(2), Oyedele presents no evidence that MetLife "fail[ed] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" as required by that statute, aside from a single instance where Oyedele found that her contact at MetLife had gone on vacation.  Oyedele Decl. ¶ 30.  The Court finds that this single delay (Oyedele does not even say how long it was) was not unreasonable.

## III.   REMAINING ISSUES

The remainder of MetLife's motion for summary judgment is easily addressed given the discussion above.  MetLife moves for summary judgment on Oyedele's claim for punitive damages.  "Punitive damages are available 'if in addition to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious.'"  *Amadeo*, 290 F.3d at 1164 (quoting *PPG Indus. v. Transamerica Ins. Co.*, 975 P.2d 652, 658 (Cal. 1999)).  Because the Court has held that MetLife is entitled to summary judgment on Oyedele's bad faith claim, it follows that it is entitled to summary judgment on her claim for punitive damages as well.

MetLife additionally moves for summary judgment that there was no breach of Oyedele's disability insurance policy, because MetLife has paid Oyedele benefits under a reservation of right.  But Oyedele has not yet brought any breach of contract claim against MetLife, so summary judgment on this issue is denied on that basis.

United States District Court
Northern District of California

12

## CONCLUSION

For the foregoing reasons, the Court denies summary judgment in favor of MetLife on its rescission claim, grants summary judgment that the misstatements on Oyedele's insurance forms were material, and grants summary judgment in favor of MetLife on Oyedele's bad faith claims and claim for punitive damages.

**IT IS SO ORDERED**.

Dated:  December 10, 2014

_____
JAMES DONATO
United States District Judge